UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GALEN MCLEAN,

                  Petitioner,                     Case No. 1:19-cv-799

v.                                       Honorable Paul L. Maloney

RANDEE REWERTS,

                  Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Galen McLean is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Following a two-day jury trial in the Cass County Circuit Court, Petitioner was convicted of three counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b; one count of conspiracy to commit CSC-I, and one count of failure to register as a sex offender, in violation of Mich. Comp. Laws § 28.729. On July 15, 2016, the court sentenced Petitioner, as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 4 to 15 years for failure to register to be served concurrently with four life sentences for the CSC-I violations.

On September 27, 2019, Petitioner timely filed his habeas corpus petition raising the same sixteen grounds for relief he had raised in the Michigan appellate courts:

I.      Petitioner must be resentenced where his sentence was improperly enhanced by the use of a misdemeanor conviction from Missouri, and trial counsel was ineffective for failing to challenge the mistake.

II.     The trial court denied Petitioner his state and federal constitutional rights to a fair trial by allowing the prosecuting attorney to elicit through leading questions the complainant's testimony of abuse.

III.    The trial court erred, abused its discretion, and denied Petitioner his right to a fair trial when it allowed the SANE nurse to testify as to the complainant's hearsay statements.

IV.     Petitioner must be resentenced where the trial court abused its discretion when it scored 15 points for offense variable 10 where the record did not support the assertion that predatory conduct was involved.

V.      Petitioner must be resentenced where the trial court abused its discretion when it scored 50 points rather than 0 points for OV-11 where no criminal sexual penetration "arising out of the sentencing offense" occurred, and trial counsel was ineffective for failing to object to the scoring.

VI.     Petitioner must be resentenced where the trial court abused its discretion when it scored 10 points rather than 0 points for offense variable 14 where the record did not support the allegation that Petitioner was a leader in a multiple offender situation.

VII.    Petitioner must be resentenced where the trial court abused its discretion when it scored 25 points rather than 0 points for offense variable 19 where resisting and obstructing charge is not part of this offense.

VIII.   Due process requires resentencing where a number of Petitioner's prior convictions that resulted in incarceration may have been obtained without counsel or a valid waiver; and defense trial counsel was constitutionally ineffective in failing to object at sentencing to consideration of those convictions to either score sentencing guidelines prior record variables or determine Petitioner's sentence.

IX.     The mid-trial amendment of the felony information to comport with the proofs denied Petitioner his constitutional right to notice of the charges against him and the trial court erred and abused its discretion and denied Petitioner a fair trial when it granted the prosecution's motion.

X.      Trial counsel was ineffective for failing to investigate and present a substantial defense witness that Petitioner had informed the Michigan State Police that he was moving to Missouri.

XI.     The trial court erred, abused its discretion, and denied Petitioner his state and federal constitutional rights to a fair trial by allowing the prosecuting attorney to violate MCR 6.201 Discovery.

XII.    Trial counsel was ineffective for failing to investigate and present substantial witnesses from the Petitioner's witness list of over 50 witnesses, and to secure an expert witness for defense.

XIII.   Trial counsel was ineffective where he failed to raise objection to picture and reports that the prosecution withheld till days before trial, or day of trial, by not allowing defense adequate time to prepare defense.

XIV.    Prosecution deliberately withheld evidence, in violation of MCR 6.201, and violated Petitioner's rights to due process, thus creating clear case of a *Brady* violation.

XV.     Trial court erred, abused its discretion and denied Petitioner his right to a fair trial, when the prosecution purposefully elicited from witness Victoria Howard testimony of hearsay statement supposedly made by the Petitioner of his requirement to register as [a] sex offender.

XVI.    Trial counsel was ineffective for failure to object to the prosecution interjecting without proof, in violation of order filed and granted by trial court, violation of motion to object to evidence of Petitioner's past criminal sexual conduct under MCL 768.227a, filed on May 11, 2016.

(Pet., ECF No. 1, PageID.34–36.)  Respondent has filed an answer to the petition (ECF No. 13) stating that the grounds should be denied because they are not cognizable, procedurally defaulted and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are not cognizable or without merit.  Accordingly, I recommend that the petition be denied.

<u>Discussion</u>

## I.    Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution as follows:

> This case arises out of the sexual abuse of a friend's six year-old daughter, MH.  Defendant, a registered sex offender, and his wife took MH into their home in October 2014 after her mother's housing condition had become unstable.  MH slept in a child's bed in the bedroom shared by defendant and his wife.
>
> MH testified at trial that defendant used his penis to penetrate her mouth three times and her vagina at least once; she additionally testified that defendant and his wife used a vibrator (which she called a "pink buzzer") to penetrate her

3

vagina, although she did not specify which of them had physically inserted it.  MH testified that defendant's wife was present during all of these assaults.

MH was returned to her mother's care in December 2014.  In April 2015, defendant moved to Missouri.  MH disclosed the abuse to her mother in May 2015, and she subsequently informed the Cass County Sheriff's Department.  In June 2015, a sexual assault nurse examiner examined MH at the Sheriff's Department's request.  MH told the nurse examiner that defendant and his wife had used their tongues on her vagina.  She also told the nurse examiner that defendant had forced her to touch his penis and had penetrated her mouth and vagina with his penis.  MH also stated that defendant and his wife had inserted "a pink toy that made a buzzing noise" into her vagina at least 10 times, hurting her.  The nurse examiner testified to all of this.  The nurse examiner also testified that MH's examination revealed no physical evidence that she had been sexually assaulted, but because the assaults had occurred months earlier and genitals heal rapidly, this fact was not surprising.

Cass County Sheriff's Detective Kristin Daly testified that defendant's sex offender registration listed his address as being in Dowagiac, Michigan until July 8, 2015.  However, Daly was informed in June 2015 by MH's mother and another party that defendant and his wife had left the state.  Defendant was arrested in Missouri in late July or early August 2015.

At the beginning of the second day of trial, the prosecution moved to amend the felony information relative to one of the CSC I counts.  The prosecution made the motion in response to MH's testimony describing penetration with a vibrator but not with a finger.  The motion therefore sought to amend that count to allege that defendant had penetrated MH's vagina with an object, rather than digitally, as the information had initially alleged.  The trial court granted the motion.

(Mich. Ct. App. Op., ECF No. 14-6, PageID.714–715) (footnotes omitted).  The jury heard testimony for about four hours over a two-day period.  The prosecutor called to the stand the police officer who received the initial complaint from the victim's mother, the owner of the home where the CSC-I offenses occurred, the person who conducted the forensic interview of the victim, the victim's mother, the person with whom the victim was living when the sexual assaults were first disclosed, a sexual assault nurse examiner (SANE), and the investigating detective.  Petitioner did not call any witnesses and he did not testify.  The jury deliberated for about thirty minutes before finding Petitioner guilty of all charged crimes.  (Trial Tr. II, ECF No. 14-4, PageID.675.)

4

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences. Petitioner's counsel-assisted appeal brief included 10 issues (habeas issues I–X, below). Petitioner also filed a *pro per* supplemental brief that added 6 additional issues (habeas issues XI–XVI, below). On January 11, 2018, the Michigan Court of Appeals issued an unpublished opinion rejecting Petitioner's claims and affirming the trial court. The appellate court squarely addressed the issues raised in counsel's brief; however, the court gave short shrift to the issues raised in the *pro per* brief: "We have reviewed all of these additional issues with reference to the lower court record, and have concluded, for the reasons contained in the prosecution's supplemental brief, that none of them have merit." (Mich. Ct. App. Op., ECF No. 14-6, PageID.723.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court, raising the same issues he had raised in the court of appeals. By order entered October 2, 2018, the supreme court denied leave because the court was "not persuaded that the questions presented should be reviewed by this Court." (Mich. Order, ECF No. 14-7, PageID.1303.)

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

5

proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### A.    Petitioner's sentencing claims

Many of Petitioner's habeas claims relate to the trial court's determination of Petitioner's sentence under the Michigan sentencing guidelines as enhanced by Michigan's habitual offender statutes.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  Nonetheless, it is well established that a court violates due process when it imposes a sentence based upon materially false information.  *United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted).

To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447. As set forth fully below, none of Petitioner's challenges are proper due process challenges based on the trial court's consideration of false or inaccurate information. Instead, they are non-cognizable state law challenges to the state court's application of the guidelines and habitual offender statutes.

1. **Habitual offender enhancement based on a misdemeanor (habeas ground I)**

Petitioner complains that the trial court, when tallying up Petitioner's prior felonies for the habitual offender enhancement, improperly relied on a Missouri conviction that was a misdemeanor. The court of appeals disagreed:

> Defendant argues that the Missouri offense of "Sexual Misconduct with a Child 1st" is not a felony in Missouri. The pre-sentence investigation report (PSIR) lists this offense as "Sexual Misconduct Involving a Child by Indecent Exposure—1stDegree (Felony Class D)." Defendant provides a citation to a Missouri statute entitled "sexual misconduct, 1st Degree" that is indeed a misdemeanor under Missouri law. See MO Rev Stat § 566.093. However, that statute makes no reference to child victims, and it is not clear that defendant was convicted under that statute. The Missouri criminal code also contains the felony offense of "sexual misconduct involving a child," which may be committed, inter alia, by an offender exposing his genitals to a child less than 15 years of age. See MO Rev Stat § 566.083. The circumstances of defendant's offense, according to the PSIR, involved him exposing his genitals to a 12-year-old girl. Although the PSIR does not provide a statutory subsection, there is no evidence in the record to support defendant's contention that his conviction was under MO Rev Stat § 566.093 and therefore a misdemeanor in Missouri. We are convinced that no plain error occurred. *Unger*, 278 Mich App at 235.

(Mich. Ct. App. Op., ECF No. 14-6, PageID.719–720.)

Petitioner presents to this Court the same argument he presented to the Michigan Court of Appeals. (*Compare* Pet'r's Br., ECF No. 2-1, PageID.127–129, *with* Pet'r's Appeal Br., ECF No. 14-6, PageID.774–776.) Thus, he has not bothered to respond to the appellate court's

conclusions that the Missouri conviction which Petitioner contests was, in fact, a felony in Missouri and would be a felony in Michigan.

Whether or not criminal conduct would be a felony in Michigan or should be counted as a felony under Michigan's habitual offender statute is purely a matter of state law. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Petitioner does not contest the state court's factual determinations regarding the nature of the Missouri conviction—or at least he has not provided any evidence, much less clear and convincing evidence, that the state court's factual determinations are unreasonable. Because the Court must accept the state court's determination that the factual determinations regarding the underlying crime either make it a felony under Michigan law or warrant counting it as a felony under Michigan habitual offender statute, Petitioner is not entitled to habeas relief on this claim.

## 2.    Errors in scoring offense and prior record variables (habeas grounds IV, V, VI, VII, and VIII)

With respect to several offense variables and the prior record variables, Petitioner raised a bevy of interwoven challenges to the trial court's assessment of points. Petitioner's challenges are generally non-cognizable. The crux of each challenge is that the trial court applied the guidelines erroneously when it assessed the points for offense variables 10, 11, 14, and 19, and in assessing Petitioner's prior record scores. As noted above, claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto*, 454 U.S. at 373–74; *Austin*, 213 F.3d at 301–02.

Similarly, Petitioner contends that he was denied due process because the prosecutor's proof with regard to the variables was insufficient, that the prosecutor failed to establish the underlying facts by a preponderance of the evidence.  Whether or not the evidence preponderated or was "sufficient" to demonstrate Petitioner's conduct as found by the trial court is not a constitutional issue.

The Sixth Circuit described the scope of constitutional protection at sentencing as follows:

But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial."  *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc).  "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant— if not essential—to [the judge's] selection of an appropriate sentence." *Id.* at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham–Wright*, 715 F.3d 598, 601 (6th Cir.2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir.2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016).  In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[1] the Supreme Court acknowledged that "sentencing courts have always operated without constitutionally imposed burdens of proof . . . ."  *Id.* at 92 n.8.[2]

Petitioner argues that "[d]ue process demands that at the very least, facts in support of Offense Variable scoring must be proved by a preponderance of the evidence."  (Pet'r's Br., ECF No. 2-1, PageID.151, 155, 158, 162.)  He cites *United States v. Watts*, 519 U.S. 148, 156 (1997) in support of that argument.  *Watts*, indeed, notes that proof by a preponderance of the evidence would satisfy due process, but the Court did not say that due process requires it.  Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required.  Thus, *Watts* was not an attempt to establish the bottom

---

[1] *McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013).  *See United States v. Haymond*, 139 S.Ct. 2369, 2378 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions . . . .").  The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt.  The underlying premise from *McMillan* quoted above— that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne* when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions.  None of the cases in the line of authority that culminated in *Alleyne*—*Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005)—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences.

[2] Even the term "burden of proof" can be misleading.  As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence."  *Id.* at 695 n. 20.  Generally, the constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt."  There are times, however, where the constitution permits the placement of the burden of production and persuasion on the defendant, for example, with regard to affirmative defenses.  It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.

limit of constitutional propriety, it merely held that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct.[3]

Even though the State of Michigan may require that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is a matter of state law, not the constitution. Therefore, a sufficiency-of-the-evidence claim for sentencing, at least for a non-capital offense, is not cognizable on habeas review.

Petitioner also claims that his sentence violates the Sixth Amendment right to jury trial: "[w]hen the facts admitted by the defendant or found by the jury are not sufficient to assess the minimum number of OV points required for the sentencing cell under which the defendant was sentenced, 'an unconstitutional constraint actually impaired the defendant's Sixth Amendment right.'" (Pet'r's Br., ECF No. 2-1, PageID.150, 157.) Petitioner's argument is founded upon the Michigan Supreme Court decision in *People v. Lockridge*, 870 N.W.2d 502 (2015). *Lockridge*, in turn, is based upon the line of authority including *Apprendi*, *Blakely*, *Booker*, and *Alleyne*.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved

---

[3] As a practical matter, the preponderance of the evidence standard might be the lowest acceptable standard of persuasion, not because of the due process clause, but because anything lower than "more likely than not" is not really persuasive at all.

to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Thereafter, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  In *Lockridge*, the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only.  *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264–265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018).  The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional.  *Robinson*, 901 F.3d at 714.  The court reasoned that, "[]a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences. *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111–12).

In the instant case, Petitioner was sentenced in 2016, about three years after the Supreme Court decided *Alleyne*.  *Alleyne* therefore was clearly established at the time of Petitioner's sentence.  Moreover, Petitioner was sentenced one year after *Lockridge* was decided.

As a result, at the time Petitioner was sentenced, the sentencing guidelines no longer were mandatory, but advisory only.

Purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481–82 (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *Tucker*, 404 U.S. at 447); *see also Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts."). Consideration of the Michigan sentencing guidelines minimum range was entirely discretionary at the time the trial court sentenced Petitioner. Because the guidelines were entirely discretionary, the consideration of judge-found facts does not implicate Petitioner's constitutional rights. Petitioner's Sixth Amendment claim is meritless.

Petitioner next complains that it was unconstitutional for the trial court to rely on convictions where the criminal history does not indicate that counsel was present for the prior convictions on Petitioner's behalf. As Petitioner points out, "[i]n *Tucker*, the United States Supreme court explained that 'to permit a conviction obtained in violation of *Gideon v. Wainwright* 372 US 335; 83 S Ct 792 (1963) to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case.'" (Pet'r's Br., ECF No. 2-1, PageID.163.) Petitioner is certainly correct. At first blush, it would appear that perhaps

Petitioner's prior record variable score or his habitual offender enhancement is constitutionally infirm.  Petitioner's claim, however, does not withstand scrutiny.

The Michigan Court of Appeals resolved Petitioner's claim regarding "uncounseled" prior convictions as follows:

> A defendant's prior convictions that were obtained in violation of a defendant's 6th amendment right to counsel, see *Gideon v Wainright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), may not be used to increase a subsequent sentence.  See *People v Carpentier*, 446 Mich 19, 31; 521 NW2d 195 (1994), citing with approval *People v Moore*, 391 Mich 426, 436–438; 216 NW2d 770 (1974).  A defendant seeking to challenge the validity of the use of his prior sentences bears the initial burden of proof, by either presenting evidence that he was denied representation in connection with his previous convictions, or that the sentencing court either failed to reply to a request for records or refused to provide records. *Id*.at 32-33.

> Here, defendant has not satisfied that initial burden, but instead merely states that the PSIR does not contain information regarding whether defendant was represented by counsel during some of his prior convictions.  This essentially places the burden on the prosecution to prove that defendant's prior convictions were not invalid.  Additionally, *Carpentier* makes it clear that a defendant may satisfy this initial burden either with evidence that his convictions were obtained in violation of his right to counsel, or evidence that a sentencing court "failed to reply" to a request for records or "refused to provide" such records.  *Id*. at 34–35.  Defendant does not present any evidence in support of his assertion and therefore has not met his initial burden of proof.  Similarly, because defendant has not presented any evidence that his prior convictions were obtained in violation of his right to counsel, or that he requested his conviction records and the sentencing courts failed to reply or refused to provide them, defendant has failed to establish the factual predicate for his related claim of ineffective assistance of counsel.  See *Hoag*, 460 Mich at 1, 6.

(Mich. Ct. App. Op., ECF No. 14-6, PageID.722–723.)  Petitioner does not respond to the court of appeals' determinations of fact or its determinations of law; instead, Petitioner simply parrots the argument raised to, and rejected by, the court of appeals.

As was the case in the state appellate courts, Petitioner does not present any evidence, from the record or otherwise, to show that his prior convictions were uncounseled.  Accordingly, his claim that the trial court should not have counted those convictions for purposes

16

of determining Petitioner's prior record variable score or his status as a habitual offender are meritless.

Finally, Petitioner argues repeatedly that his sentence must be based on accurate information.  (Pet'r's Br., ECF No. 2-1, PageID.150, 155, 158, 162.)  Yet, Petitioner does not identify any inaccurate or false information that the trial court relied on when the court scored Petitioner's offense and prior record variables.  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447.  Instead, Petitioner indicates his disagreement with the inferences the court drew from the facts and the court's interpretation of the guidelines.

With respect to Offense Variable 10, regarding exploitation of a vulnerable victim, the Michigan Court of Appeals identified facts from the record that support the points assessed. Petitioner does not claim that any one of them is false or inaccurate.  With respect to Offense Variable 11, regarding additional criminal sexual penetrations, the Michigan Court of Appeals identified multiple and repeated penetrations and concluded that it was not plain error for the trial court to infer that, in light of Petitioner's multiple and repeated penetrations, "on at least one occasion defendant sexually penetrated [the victim] twice . . . ."  (Mich. Ct. App. Op., ECF No. 14-6, PageID.721.)  Petitioner does not identify any false or inaccurate fact—he obviously disagrees with the inference, but he does not claim that it is based on false facts.

With respect to Offense Variable 14, regarding Petitioner's leadership position in a multiple offender situation, the Michigan Court of Appeals noted that Petitioner committed the sexual assaults with the encouragement or support of his wife and that Petitioner was the main

perpetrator and the dominant one of the two.  (*Id*.)    Petitioner does not identify any false or inaccurate fact relied upon by the court.

With respect to Offense Variable 19, regarding Petitioner's threat to the security of a penal institution or court, the Michigan Court of Appeals described a report where Petitioner struck a sheriff's deputy while being unshackled after a court appearance.  (*Id*., PageID.722.) Petitioner does not identify any false or inaccurate fact relied upon by the court.  He contests whether the incident is properly considered for sentencing in this prosecution, but he does not claim the incident did not occur nor does he claim that the court of appeals underlying determinations of fact were false or inaccurate.

Petitioner has not shown that any of the facts determined by the state courts were unreasonable on the record.  Petitioner has not shown that the determinations of the state courts, in resolving Petitioner's myriad challenges to his sentences, are contrary to, or an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief with regard to his sentences.

### B.    Leading questions (habeas ground II)

Petitioner argues that the prosecutor's extensive use of leading questions when questioning the eight-year-old victim denied Petitioner's right to confront the victim and his due process rights.  (Pet'r's Br., ECF No. 2-1, PageID.143.)  The court of appeals concluded that the prosecutor's use of leading questions was permissible:

> Generally, leading questions are not permitted on direct examination. MRE611(d); *Susser Estate*, 254 Mich App at 239-240.  However, a trial court has discretion to grant a party "a considerable amount of leeway" in asking leading questions of child witnesses. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411(2001).  Further, the prosecution's use of leading questions does not warrant reversal if a defendant was not prejudiced as a result. *Id*. at 587–588.
>
> Our review of the record shows that, while some of the prosecution's questions were leading, none require reversal of defendant's convictions.  MH was

only eight years old at the time of trial, and the record shows that she found it awkward and uncomfortable to have to testify regarding her sexual abuse at the hands of defendant.  Further, she was able to describe some of the sexual abuse, most notably the penetration with a vibrator, without the use of leading questions. MH admitted that she was "not really focused today" and had difficulty remembering questions, and she asked the prosecution to repeat or clarify questions that she did not understand.  It is clear from the record that the prosecution resorted to leading questions only when MH's attention wandered.  Given MH's age and the nature of the subject matter to which she was testifying, it was within the trial court's discretion, *Susser Estate*, 254 Mich App at 239, to conclude that "[a]ny leading of the witness was only to the extent necessary to develop her testimony." *Watson*, 245 Mich App at 587.

(Mich. Ct. App. Op., ECF No. 14-6, PageID.716.)

Petitioner does not cite any Supreme Court authority in support of his argument.

He cites only *United States v. Grey Bear*, 883 F.2d 1382 (8th Cir. 1989).  The Sixth Circuit Court

of Appeals, however, has cited *Grey Bear* for the proposition that the Sixth Amendment permits

leading questions on direct examination:

The victim has Down syndrome and therefore had difficulty responding to the prosecutor's questions.  Under Ohio law, "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony."  Ohio R. Evid. 611(c) (2004).  In interpreting this rule, Ohio courts have permitted prosecutors to use leading questions "on direct examination where the victim is of tender years," *State v. Timperio*, 38 Ohio App. 3d 156, 528 N.E.2d 594, 596 (1987), or when the witness "appeared to be nervous and 'a little slow' and 'straining' with his answers," *State v. Smith*, 80 Ohio St. 3d 89, 684 N.E.2d 668, 689 (1997).  While the victim is not a child, she functions at a very basic level.  As such, leading questions are permitted under such circumstances.  *See, e.g., United States v. Shoupe*, 548 F.2d 636, 641 (6th Cir. 1977) ("the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court").

Federal courts have similarly found that leading questions on direct examination are permissible in questioning certain witnesses, including a child sexual abuse victim, a foreign witness testifying through a translator, an unusually soft-spoken and frightened witness, and a mentally retarded adult who was the victim of sexual abuse.  *See, e.g., United States v. Ajmal*, 67 F.3d 12, 15–16 (2d Cir. 1995) (holding that the Sixth Amendment permits leading questions on direct examination of a foreign witness testifying through a translator); *United States v. Castro–Romero*, 964 F.2d 942, 943–44 (9th Cir. 1992) (holding that the Sixth Amendment permits leading questions on direct examination of a child sexual abuse victim); *United States v. Grey Bear*, 883 F.2d 1382, 1393 (8th Cir .1989)

19

(recognizing that the Sixth Amendment permits leading questions on direct examination in the case of an unusually soft-spoken and frightened witness); *see also United States v. Goodlow*, 105 F.3d 1203, 1207–08 (8th Cir. 1997) (recognizing that Federal Rule 611(c) does not preclude frequent use of leading questions during the direct examination of a mentally retarded adult who was the victim of sexual abuse).

*Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005).

Petitioner has failed to show that the court of appeals' rejection of his due process or confrontation clause challenges based on the prosecutor's use of leading questions when examining the victim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

### C.    Hearsay (habeas grounds III, XV, and part of XI)

Petitioner raises three challenges regarding the admission of evidence that he contends was hearsay.  First, Petitioner complains that the sexual assault nurse examiner (SANE), who testified regarding her examination of the victim, testified regarding out-of-court statements made by the victim during the examination.  Second, Petitioner complains that his housemate was permitted to testify regarding out-of-court statements made by Petitioner.  And finally, Petitioner contends that the victim's mother's best friend, who was present when the sexual assaults first came to light, was permitted to offer hearsay testimony.

### 1.    SANE testimony regarding out-of-court statements of the victim (habeas ground III)

Petitioner makes three distinct arguments with regard to the SANE's testimony. First, he argues that the trial court erred when it concluded that the SANE's testimony recounting the victim's statements during the examination was not hearsay under Michigan Rule of Evidence 803(4).  Second, Petitioner claims that because of the admission of the "hearsay" testimony he "was denied his Due Process right to a fair trial and his convictions must be reversed."  (Pet'r's Br., ECF No. 2-1, PageID.148.)  This broad claim might also include a claim for violation of

Petitioner's Confrontation Clause rights.  And third, he contends that counsel rendered ineffective assistance when he failed to object to the hearsay statements.  Each of Petitioner's arguments fails.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68.

Here, the Michigan Court of Appeals concluded the evidence was properly admitted under Michigan law.  (Mich. Ct. App. Op., ECF No. 14-6, PageID.716–717.)  The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright*, 464 U.S. at 84.  The Sixth Circuit recognizes "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Thus, this Court is bound by the state appellate court's determinations that the evidence was admissible under the state rules.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496,

512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Additionally, there is nothing inherent in the admission of hearsay testimony that offends fundamental principles of justice.  In fact,

> [t]he first and most conspicuous failing in [arguing that hearsay testimony violates due process] is the absence of a Supreme Court holding granting relief on [that] theory:  that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause.  That by itself makes it difficult to conclude that the state court of appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

*Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)).

The admission of the victim's statements through the testimony of the SANE does not violate the Confrontation Clause either.  The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI.  The Supreme Court has long read this right as securing an adequate opportunity to cross-examine adverse witnesses.  *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242–43 (1895), and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)).  As stated by the Court:

> Our own decisions seem to have recognized at an early date that it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:
>
>> "The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."  *Mattox v. United States*, 156 U.S. 237, 242–43 (1895).

> Viewed historically, then, there is good reason to conclude that the Confrontation
> Clause is not violated by admitting a declarant's out-of-court statements, as long as
> the declarant is testifying as a witness and subject to full and effective cross-
> examination.

*California v. Green*, 399 U.S. 149, 157–58 (1970).

In *Green*, the Court compared the purposes of confrontation with the dangers in admitting an out-of-court statement. Confrontation "(1) insures that the witness will give his statements under oath—thus impressing the witness with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for discovery of truth'; and (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Green*, 399 U.S. at 158. Although an out-of-court statement may not have been subject to any of these protections, it regains the lost protections if the declarant is present and testifying at trial. *Id.* at 158. Further, an inability to cross-examine the witness at the time the out-of-court statement is made is not of crucial significance as long as the witness is subject to full and effective cross-examination at trial. *Id.* at 159. Similarly, the jury's inability to view the declarant's demeanor when the statement was made is not important when the jury may view that witness at trial either affirming or disavowing the statement. *Id.* at 160.

In other words, contemporaneous cross-examination before the jury is not so much more effective than subsequent examination at trial that it must be made the touchstone of the Confrontation Clause. *Id.* at 161. Thus, where the declarant testifies and is cross-examined, "our cases, if anything, support the conclusion that the admission of his [or her] out-of-court statements does not create a confrontation problem." *Green*, 399 U.S. at 162; *see also Owens*, 484 U.S. at 560 (inquiry into the "indicia of reliability" or the "particularized guarantees of trustworthiness"

of the out-of-court statements is not called for when the declarant is available at trial and subjected to unrestricted cross-examination, because "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements").

The declarant, the victim, testified at trial, and Petitioner's counsel subjected her to unrestricted cross-examination.   Any suggestion that the SANE's testimony violated the Confrontation Clause, therefore, has no merit.

Finally, Petitioner tries to bring the admission of the victim's out-of-court statements through the SANE's testimony within the bounds of habeas cognizability by arguing that his counsel's failure to object to the testimony was ineffective assistance and, thus, unconstitutional.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.   A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  Even if a court determines that counsel's performance was unreasonable, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

24

The state appellate court's determination that the SANE's testimony regarding the victim's out-of-court statements was properly admitted under the Michigan Rules of Evidence conclusively resolves that issue.  As a result, any objection counsel might have raised on that ground would have been futile.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, it could not be ineffective assistance for counsel to forego raising that objection.

### 2.    Housemate's testimony regarding out-of-court statements of Petitioner (habeas ground XV)

The house where the CSC offenses occurred belonged to Victoria Howard.  She testified that Petitioner lived with her during a period beginning in 2010 and ending in 2015.  She testified that Petitioner told her he was a sex offender and required to register because he had been caught streaking.  (Trial Tr. I, ECF No. 14-3, PageID.465.)  She also testified that after Petitioner had moved out, he asked to use Ms. Howard's address as his registered address.  (*Id*., PageID.467–468.)  Petitioner contends the admission of this testimony violated  his right to a fair trial because the statements were hearsay and because they related to inadmissible "prior bad acts."  (Pet'r's *Pro Se* Suppl. Appeal Br., ECF No. 14-6, PageID.935; Pet'r's Br., ECF No. 2-1, PageID184.)

The Michigan Court of Appeals rejected this claim, relying on the reasoning offered in the prosecutor's supplemental brief.[4]  (Mich. Ct. App. Op., ECF No. 14-6, PageID.723.)  The prosecutor reasoned that Howard's testimony regarding Petitioner's statement could not render his trial unfair as hearsay because, by definition, the statement of a party opponent is not hearsay.  (Prosecutor's Suppl. Appeal Br., ECF No. 14-6, PageID.992.)   Michigan Rule of Evidence

---

[4] The Michigan Attorney General appeared on behalf of the prosecutor on appeal; nonetheless, the Court will refer to the appellee as the prosecutor and the appellee's argument as the prosecutor's position.  *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=334153 &CourtType_CaseNumber=2 (visited Mar. 27, 2021).

801(d)(2) clearly states that a party's own statement offered against that party is not hearsay.  The court of appeals' conclusion that the statement was admissible is axiomatically correct.

The prosecutor reasoned that the statements were not offered as "prior bad acts" but to show that Petitioner knew he was required to register as a sex offender, an element of the charged offense for failure to register as a sex offender.  (Prosecutor's Suppl. Appeal Br., ECF No. 14-6, PageID.992.)  Thus, the prosecutor argued, the evidence could not be excluded under either Michigan Rule of Evidence 403 or 404(b).  Again, the court of appeals' conclusion that the statement was admissible under the rules of evidence is axiomatically correct.

The prosecutor also reasoned that Petitioner's counsel could not be deemed ineffective for failing to object because "'counsel is not required to make a meritless motion or a futile objection.'"  (Prosecutor's Suppl. Appeal Br., ECF No. 14-6, PageID.992.)  The court of appeals' conclusion that the prosecutor was right is not axiomatically correct, but it is correct nonetheless because "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752.

Petitioner has failed to show that the state court's determination that the housemate's testimony was admissible is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

### 3.    Testimony of the victim's mother's best friend (part of habeas ground XI)

Petitioner also contends that the victim's mother's best friend, Shannon Johns, offered inadmissible hearsay testimony regarding out-of-court statements by the victim.  (Pet'r's Br., ECF No. 2-1, PageID.173–174.)  The exchange to which Petitioner objects reads as follows:

Q:    And then you said you both spoke with [the victim]?

A:    Yes.

Q:      What was the question that was asked of [the victim]?

A:      If she had been touched:  like I said, she wouldn't tell us.  [The victim's mother] then asked her if it was Mr. Galen. [The victim]—

Q:      Okay.  Did – had [the victim's sister] already said that it was Galen that had touched her?

A:      No, she wouldn't tell me.

(Trial Tr. I, ECF No. 14-3, PageID.530.)  Petitioner goes into some detail as to why the victim's statements to Ms. Johns were not spontaneous and, thus, could not be considered admissible under 803A.

Michigan Rule of Evidence 803A provides an exception to the hearsay rule:

A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

A statement may not be admitted under this rule unless the proponent of the statement makes known to the adverse party the intent to offer the statement, and the particulars of the statement, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

Mich. R. Evid. 803A.

It is difficult to discern exactly what Petitioner is attempting to accomplish with his challenge to 803A.  The prosecutor did not seek to introduce the victim's out-of-court statements,

if any, to Ms. Johns or the victim's mother through Rule 803A.  The hearsay objections posed to such testimony were sustained.  (Trial Tr. I, ECF No. 14-3, PageID.529, 551.)  Indeed, based on the testimony, the victim, apparently, never told Ms. Johns or the victim's mother anything and neither Ms. Johns nor the victim's mother testified as to what the victim told them; thus, there simply was no testimony regarding out-of-court statements by the victim from those witnesses.

The prosecutor, in responding to Petitioner's argument, was also confused.  The prosecutor concluded that Petitioner was attempting to argue that because the victim's initial disclosure to Ms. Johns or the victim's mother—even though there was no such disclosure revealed—was not spontaneous, the victim should not have been permitted to testify at the trial. (Prosecutor's Suppl. Appeal Br., ECF No. 14-6, PageID.991.)  The prosecutor argued that there was no authority, and no reason, for such a rule.  The court of appeals adopted that reasoning in rejecting Petitioner's claim as meritless.  (Mich. Ct. App. Op., ECF No. 14-6, PageID.723.)

Petitioner has failed to show that the court of appeals' rejection of his argument is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on that claim.

### D.    Notice of amended charges (habeas ground IX)

The prosecutor initially charged Petitioner with penetrating the victim's genital opening with his mouth, his penis, and his finger.  At trial, however, the victim did not testify regarding digital penetration.  Instead, she testified regarding Petitioner using a vibrator to penetrate her genital opening.  Accordingly, on the second day of trial, the prosecutor moved to amend Count IV of the information to reference penetration with an object instead of penetration with a finger.  Petitioner objected at the trial, on appeal, and now in his habeas petition, claiming that he did not have constitutionally adequate notice of the charges.

The Michigan Court of Appeals rejected Petitioner's notice argument:

28

      A trial court may abuse its discretion if its grant of the prosecution's motion to amend the information results in "unfair surprise or prejudice" to defendant. *Id*., quoting MCR6.112(H).  MCL767.76 provides in relevant part that the trial court "may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection, or omission in form or substance or any variance with the evidence."  An amended information does not prejudice a defendant if it does not add a new offense, does not require a different defense or evidence, and was not a surprise. *Id*. at 688.

      Here, the amendment of the information was simply to change one of the CSC I counts from digital penetration to penetration with an object.  No new counts were added.  Defendant's defense was that MH was not credible, that her age and the amount of attention that she received from law enforcement in telling her story rendered her testimony suspect, and that her allegations were not corroborated by any physical evidence.  The amendment of the information did not require that defendant alter this defense.  Further, in light of the fact that defense counsel referred to and questioned the nurse examiner regarding her report on MH's medical evaluation, defendant could hardly have been surprised that MH's statement regarding penetration by a vibrator would become an issue.

(Mich. Ct. App. Op., ECF No. 14-6, PageID.718.)

      In *Koontz v. Glossa*, 731 F.2d 365 (6th Cir. 1984), the Sixth Circuit Court of Appeals described the extent of notice of the charges that due process requires:

      The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to adequate preparation of his defense.  *See*, *e.g*., *In Re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977).  This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged.  Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial.  *Combs v. Tennessee*, 530 F.2d at 698.

*Koontz*, 731 F.2d at 369.  "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)).  "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira*, 806 F.2d at 639.

The charge in the information and amended information provided Petitioner notice of the place and the time of the alleged criminal conduct. The charge also tracked the language in the statute regarding what constituted first-degree criminal sexual conduct. Mich. Comp. Laws § 750.520(b). Indeed, the statute criminalizes sexual penetration, *id.*, which is defined to mean "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." Mich. Comp. Laws § 750.520a(r).

Although Petitioner baldly claims that he did not have sufficient notice so that he might prepare a defense to the claim that he used an object to penetrate the victim's genital opening, he offers nothing to counter the court of appeals' determination that Petitioner's defense to the "penetration with an object" charge was exactly the same as his defense to the "penetration with his tongue" or "penetration with his penis" or "penetration with his finger" charges and that the amendment of the information to conform the charge to the evidence did not prejudice Petitioner at all. The court of appeals' analysis is eminently reasonable on the record and is neither contrary to, nor an unreasonable application of, clearly established federal law.

E.    **Prosecutorial misconduct (habeas grounds XI and XIV)**

Shortly before trial, the prosecutor produced certain police reports, a report regarding the content of Petitioner's cell phone, a report from the Child Advocacy Center, and the SANE's report, which included drawings the victim had made during the examination. Petitioner contends the prosecutor violated Michigan discovery rules and *Brady v. Maryland*, 373 U.S. 83 (1963).

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme

Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009).  A reasonable probability is "'a probability sufficient to undermine confidence in the outcome.'"  *Bagley*, 473 U.S. at 682 (quoting *Strickland*, 466 U.S. at 694.).

In instances of delayed disclosure, rather than complete suppression, *Brady* generally does not apply unless the delay itself causes prejudice.  *United States v. Bencs*, 28 F.3d 555, 560–61 (6th Cir. 1994).  Late disclosures that contradict previous statements are not necessarily material to a trial's outcome.  *See, e.g., United States v. Baker*, 562 F. App'x 447, 453–54 (6th Cir. 2014) (finding the delayed disclosure that the government had conducted a trace on a weapon, despite a prior defense statement asserting otherwise, was not material).  To show that a delay was material to the outcome, "a defendant must show what he would have done differently had he been given more time to address the *Brady* evidence"—specifically, how the evidence being disclosed earlier would have created the reasonable probability of a different result.  *United States v. Fields*, 763 F.3d 443, 459 (6th Cir. 2014) (quoting *United States v. Spry*, 238 F. App'x 142, 148 (6th Cir. 2007)).

In Petitioner's case, the Michigan Court of Appeals adopted the reasoning offered by the prosecutor in the supplemental appeal brief:  none of the evidence at issue was favorable to Petitioner; all of the evidence at issue was disclosed to the defense before trial; and there was no

31

prejudice to Petitioner.  In fact, the prosecutor—and by adoption the court of appeals—explained why the evidence ***damaged*** Petitioner's case.

Petitioner has responded in his habeas brief that the phone records/text messages include a statement from his wife Ashley that "I am sorry for lying on you." (Pet'r's Br., ECF No. 2-1, PageID.175.)  Petitioner claims that proves his innocence.  But Ashley never testified at Petitioner's trial.  There is no basis to admit the statement and no other witness through whom the statement could have been admitted.  Moreover, Petitioner ignores the damaging statements from his phone, including Petitioner's wife's question to Petitioner: "U didn't cum in her panties did U[?]" (Prosecutor's Suppl. Appeal Br., ECF No. 14-6, PageID.986.)  Undoubtedly for that reason, counsel moved to suppress the phone records, successfully.  (Cass Cnty. Cir. Ct. Register of Actions, ECF No. 14-1, PageID.312–313.)

Petitioner also states that the information from the Child Advocacy Center revealed that the forensic interviewer concluded that the victim "was not credible, in other words she could not tell the difference between truth and a lie."  (Pet'r's Br., ECF No. 2-1, PageID.183.) Petitioner's claim grossly misrepresents the record.  The forensic interviewer's statement regarding the inability to distinguish between truth and a lie related to the victim's sister, not the victim.

The court of appeals' determinations regarding the record are presumed to be correct.  Petitioner has not offered any evidence, much less clear and convincing evidence to overcome that presumption.  Based on those factual determinations, the court of appeals' further determination that no evidence was suppressed, that the evidence provided close to trial did not favor Petitioner, and that the delay did not prejudice Petitioner is neither contrary to, nor an

unreasonable application of, *Brady*.  Therefore, Petitioner is not entitled to habeas relief on this claim.

### F.    Ineffective assistance of trial counsel

Petitioner contends that his counsel was ineffective in many respects:  counsel failed to call a Michigan State Police witness to testify that Petitioner notified the state police that he was moving to Missouri; counsel failed to investigate and call any of the 50 witnesses on Petitioner's witness list; counsel failed to object to pictures or the late reports submitted by the prosecution; and counsel failed to object to references to Petitioner's past criminal sexual conduct. As noted above, to establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Strickland*, 466 U.S. at 687.  The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The Michigan Court of Appeals applied the *Strickland* standard—or at least its functional equivalent—when it reviewed Petitioner's ineffective assistance of counsel claim:

> Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise.  *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994); *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). To establish ineffective assistance of counsel, defendant first must show that his counsel's performance fell below an objective standard of reasonableness.  In doing so, defendant must overcome the strong presumption that counsel employed sound trial strategy.  Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different.  *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011).

(Mich. Ct. App. Op., ECF No. 14-6, PageID.718.)  Even though the Michigan Court of Appeals relied on state authority when it recited the standard, the Michigan Supreme Court authority cited derives the standard directly from *Strickland*.  In *Pickens*, 521 N.W.2d at 797, the Michigan Supreme Court considered whether Michigan's constitutional guarantee of the right to effective assistance of counsel was broader in any respect than the right afforded by the federal constitution. The supreme court concluded that the rights were coextensive and, accordingly, that the proper standard to evaluate ineffective assistance of counsel claims, whether the claims were based on the state or the federal constitution, was the *Strickland* standard.  *Pickens*, 521 N.W.2d at 308–327.

Therefore, Petitioner cannot show that the state court applied the wrong standard, leaving only the question whether the court of appeals applied the standard reasonably.

### 1.    Counsel's failure to call the state trooper (habeas ground X)

The Michigan Court of Appeals applied the *Strickland* standard to reject Petitioner's ineffective assistance claim regarding counsel's alleged failure to investigate or call the state trooper.  The court of appeals stated:

> Defense counsel's decisions regarding whether to call witnesses are generally presumed to be trial strategy; counsel's failure to present a witness is ineffective assistance only when it deprives a defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398.

> Here, defendant argues that his trial counsel was ineffective in failing to call an unnamed Michigan State Police Officer as a witness to testify that defendant had informed the State Police of his move and "was told to just register when he reached Missouri."  Defendant argues that this failure denied him a substantial defense— that he informed the proper authorities and that they simply failed to update the registry.  However, defendant does not name this putative witness or provide an affidavit from the witness describing any testimony that would have been offered. Defendant has thus not established the factual predicate for his claim.  *People v Hoag*, 460 Mich 6; 594 NW2d 57 (1999).

> In any event, it seems to be sound trial strategy for defense counsel to focus on defending against the much more serious charges facing defendant, which carried the potential for a life sentence.  This is especially true when the record shows that defendant spent at least two months in Missouri without ensuring that

his Michigan registration was corrected.  It is far from certain that the testimony of the unnamed police officer would have altered the jury's conclusion.  We conclude that defendant has not demonstrated that his counsel's performance fell below an objective standard of reasonableness, nor has he shown a reasonable probability that the outcome of the proceeding would have been different if his counsel had called this unnamed witness. *Armstrong*, 490 Mich at 289–290.

(Mich. Ct. App. Op., ECF No. 14-6, PageID.718–719.)

Petitioner's position depends entirely on the claim that there was a state trooper willing to testify that he or she told Petitioner he only needed to register once he reached Missouri. Petitioner faults counsel for failing to investigate, discover, and then call that witness.  The court of appeals concluded that the record did not establish that factual predicate.  The state court's determination that the record does not support Petitioner's assertion is presumed correct. Petitioner has utterly failed to provide evidence, much less clear and convincing evidence, to the contrary.  It may be that counsel investigated, but could find no such witness or it may be that counsel found a witness and the witness refuted Petitioner's claim.

It might also be that the court of appeals' reasonable interpretation of the circumstances—that counsel focused the defense on the offenses that carried life imprisonment— accurately captured counsel's strategic intentions.  Or it could be that counsel did not want to distract the jury's attention regarding what Petitioner was told before he moved because the testimony supported finding a registration violation prior to Petitioner's move to Missouri or because Petitioner signed documents acknowledging his awareness of the registration obligations and there is no evidence that Petitioner complied with that obligation on a timely basis after the move.

Ultimately, counsel's actual motivation for declining to focus his trial strategy on Petitioner's mystery witness is immaterial.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of

35

reasonable professional assistance." *Strickland*, 466 U.S. at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.*  When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, ***the question before the habeas court is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."***  *Id*. (emphasis added).

The "any reasonable argument" language from *Harrington* reflects the double deference owed.  The *Harrington* court described what the habeas court should consider and what it should not consider:

> When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105.  In *Harrington*, the issue was whether counsel could have reasonably decided to ***not*** consult a blood expert.  The *Harrington* court did not evaluate counsel's decision based on the reasons offered by counsel.  Indeed, it does not appear that there was ever a hearing that disclosed counsel's motivation for his decision.  Instead, the *Harrington* court considered the reasonableness of the decision in the abstract.  That approach necessarily follows from *Strickland*'s requirement that, to overcome the presumption of regularity, the defendant must show that the challenged action ***cannot*** be considered sound trial strategy.  If the reviewing court can conceive of a sound strategy that includes the challenged action, the matter is resolved.

*Harrington* reversed a Ninth Circuit *en banc* decision.  The *Harrington* court criticized the Ninth Circuit for limiting its inquiry to counsel's actual thinking:

> The Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking. Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, *Wiggins, supra*, at 526–527, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam). After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind. 466 U.S., at 688.

*Harrington*, 562 U.S. at 109–10. Under that reasoning, unless Petitioner shows the Michigan Court of Appeals that its proposed strategic reason for the challenged action was, in fact, not the reason for counsel's action, the habeas court does not need to inquire any further into counsel's actual reason for his or her action (or inaction). Therefore, in Petitioner's case, resolving Petitioner's ineffective assistance claim does not require the Court to determine counsel's actual reason for not calling the mystery state trooper. Counsel's actual motivation, if not expressed in the record, is immaterial. This Court must only determine whether the court of appeals' conclusion regarding a potential strategic reason for not calling the mystery witness was reasonable.

Conceding lesser issues to focus the jury's attention on more serious ones is a reasonable strategy. *See, e.g., Poindexter v. Mitchell*, 454 F.3d 564, 582 (6th Cir. 2006) (counsel implicitly conceded the issue that a killing was murder to focus on whether it was aggravated murder), (citing *Florida v. Nixon*, 543 U.S. 175, 189 (2004) (strategic decision to concede guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient)). That strategy makes even more sense here, where even if the mystery witness acknowledged that Petitioner was instructed to simply register his new address in Missouri after the move, and not in Michigan before the move, as required by law, there were significant questions as to whether Petitioner had lied with respect to his address in the months preceding the move.

37

For all of these reasons, Petitioner has failed to demonstrate that the court of appeals' rejection of his ineffective assistance of counsel claim relating to the failure to investigate or call a witness regarding registration instructions is contrary to, or an unreasonable application of, *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 2.    Failure to call other defense witnesses (habeas ground XII)

Petitioner's argument regarding counsel's failure to call witnesses on Petitioner's behalf boils down to the following:

> Petitioner argues that trial counsel was ineffective for failure to present any or all witnesses.  Had trial counsel properly subpoenaed any of these witnesses, they could have provided favorable testimony to defense case, and the outcome of the trial would have been dramatically different.

(Pet'r's Br., ECF No. 2-1, PageID.178; *see also* Pet'r's *Pro Per* Suppl. Appeal Br., ECF No. 14-6, PageID.929–930.)  In his state court appellate briefs, Petitioner provided no detail regarding what any of these witnesses might have said.  The prosecutor pointed out that without knowing what the witnesses might have said, it was impossible to determine whether counsel's failure to call them was professionally unreasonable or whether Petitioner suffered any prejudice as a result.  (Prosecutor's Suppl. Appeal Br., ECF No. 14-6, PageID.993–994.)  The court of appeals determined Petitioner's ineffective assistance claim was meritless on that ground.  (Mich. Ct. App. Op., ECF No. 14-6, PageID.723.)

The prosecutor's argument, as adopted by the court of appeals, is unassailable.  Petitioner simply cannot show either *Strickland* prong without giving the courts some clue as to what these witnesses might have said.  Accordingly, Petitioner has failed to show that the court of appeals determination of this claim is contrary to, or an unreasonable application of, clearly established federal law, and he is not entitled to habeas relief.

Petitioner has attempted to address the deficiency by adding to his arguments in this Court.  Petitioner now offers the following analysis to support his claims:

1) Had defense counsel . . . called Gail Banks, she would have testif[ied] that the victim's mother . . . told Ms. Banks directly:  "I can make my girls say what I want, I had them lie[] to DHHS for many years."

2) If defense counsel would have called Ashley['s] Ex-husband Mark Frick[, he] could have [testified] that [the] victim's mother  . . . "accused Mr. Frick of the same crime once before, and told him she was going to accuse the Petitioner, to make him pay for leaving her behind."

3) Defense counsel [c]ould have called Douglas Howard, "he could have testif[ied], that the victim . . . slept in Ms. Victoria['s] bedroom, because it was cold in the Petitioner's room [due] to no insulation."

4) Petitioner's Ex-wife Heather McLean, if defense counsel would have called her, she could [have] testif[ied] to [Petitioner's] character, how [he] was around [his] step daughter, that [he] never hurt [his] step daughter, and she felt safe [having him] be around her daughter.

5) Trial counsel was ineffective for not calling Petitioner['s] Co-defendant (Wife) Ashley McLean, who could have testif[ied Petitioner] had nothing to do with this allege[d] crime.  The prosecutor subpoena[ed] her, but never call[ed] her to the stand nor [did] trial counsel, if defense counsel could have question[ed] Ashley about her Text Messages.  And had the prosecutor provided these cell phone records (Text Messages) to my defense counsel in a timely fashion, trial counsel could have played these te[x]t messages for the jury, and the outcome could have been different.

(Pet'r's Br., ECF No. 2-1, PageID.178–179.)

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal

claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Petitioner did not provide any of the information regarding what the "uncalled" witnesses might have said in the state appellate courts.  Without providing those facts, it was impossible for the state courts to apply controlling legal principles to the facts bearing upon Petitioner's constitutional claims.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has presented in this application.  He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.*  Under Michigan law, one such motion may be filed after August 1, 1995.  Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion.

Although Petitioner's failure to fairly present this habeas ground in the state courts prevents this Court from granting habeas relief, it does not foreclose denying such relief on the merits.  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that a district court should deny a stay where unexhausted claims are meritless because, under 28 U.S.C. § 2254(b)(2) such claims may be properly denied); *Smith v. Nagy*, 962 F.3d 192, 204 (6th Cir. 2020) (court

rejected unexhausted claim on the merits citing 28 U.S.C. § 2254(b)(2)); *Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009) (explaining that a district court may "ignore the exhaustion requirement altogether and *deny* the petition if *none* of the petitioner's claims has any merit") (emphasis in original).  This ineffective assistance claim, even with Petitioner's additional facts, has no merit; accordingly, the Court will consider and deny relief on Petitioner's unexhausted claim.

The elucidation regarding what the "uncalled" witnesses might have said does not save Petitioner's claim because it is purely speculative.  Petitioner provides no affidavits from these witnesses.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("Tinsley has not introduced affidavits or other evidence establishing what they would have said. . . .  In the absence of any evidence showing that they would have offered specific favorable testimony, Tinsley cannot show prejudice from counsel's strategy recommendation not to introduce this evidence.").  Thus, even considering Petitioner's new arguments *de novo*, he is not entitled to habeas relief.

### 3.    Failure to object to the pictures and the late reports (part of habeas ground XIII)

The pictures and reports to which Petitioner refers are the same pictures and reports that Petitioner contends the prosecutor suppressed in violation of *Brady*.  The reports include supplemental police reports, the SANE report, and the forensic interviewer report.  The pictures are drawings by the victim that she prepared as she was describing the sexual assaults.  (Trial Tr

II, ECF No. 14-4, PageID.601–605.)[5]  Petitioner contends that counsel should have objected because the materials were turned over so close to trial.

Review of the entire record reveals that the late production of the materials from the prosecutor was an issue of concern to counsel, but that there were countervailing considerations.  The choice was not, on the one hand, going to trial without the late produced materials versus, on the other hand, going to trial with them; the choice was adjourning the trial to mitigate any possible prejudice or going to trial on schedule because the prejudice was minimal.  At the same time the court would have been addressing that issue, however, the court was faced with a request from the prosecution to adjourn the trial to permit the prosecutor to find a new expert witness.  On the eve of trial, the prosecutor discovered the expert she hoped to call could not testify.  The prosecutor was unable to identify a new expert in time for trial.  Petitioner's counsel opposed any adjournment, very obviously hoping to foreclose the presentation of any expert testimony that might explain to the jurors why a sexually abused child would delay disclosure for months.  Petitioner's counsel could hardly oppose an adjournment for the prosecutor's benefit and request one for Petitioner's benefit at the same time.  Counsel chose to cut off the possibility of expert testimony.[6]  Petitioner has failed to demonstrate that counsel's strategic choice was professionally unreasonable.

---

[5] The only other "picture" introduced at trial was a photograph of the house where the assaults occurred.  (Trial Tr. I, ECF No. 14-3, PageID.134.)

[6] It is noteworthy that the prosecutor, during trial, identified an expert who was able and willing to testify.  (Trial Tr. II, ECF No. 14-4, PageID.568.)  The trial court concluded that Petitioner had sufficient notice that such an expert might testify and allowed the prosecutor to amend her witness list to include the expert.  (Id., PageID.569–570.)  But the prosecutor miscalculated when the expert would have to appear.  As a result, she finished her case a few hours before the expert was scheduled to arrive.  (Id., PageID.621–622.)  Petitioner's counsel refused to take the expert's testimony out of order.  (Id.)  The prosecutor decided to offer the expert only in rebuttal.  (Id.)  Then, Petitioner's counsel chose to rest his case, foreclosing rebuttal.  (Id., PageID.628.)  Thus, the expert never testified.

Moreover, the state court of appeals adopted the prosecutor's argument that the evidence that was produced late—including the pictures and the reports—was not material.  If evidence is not material under *Brady*, counsel's failure to object to its admission cannot be prejudicial under *Strickland*.  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *United States v. Bagle*y, 473 U.S. 667, 681–82 (1985)); *see also O'Neal v. Burt*, 582 F. App'x 566, 575–76 (6th Cir. 2014) (noting that *Kyles* "equat[es] the prejudice inquiry under *Strickland* with the materiality inquiry under *Brady*"); *Montgomery v. Bobby*, 654 F.3d 668, 679 n.4 (6th Cir. 2011) ("[I]t is well settled that 'the test for prejudice under *Brady* and *Strickland* is the same.'") (en banc).  Thus, once again, Petitioner has failed to show that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law.  He is not entitled to habeas relief on this claim.

### 4. Counsel's failure to object to references to past criminal sexual conduct (habeas ground XVI)

Finally, Petitioner complains that counsel failed to object to references to Petitioner's past criminal sexual conduct.  There was a flurry of motions in the few weeks before trial regarding evidence that the prosecutor was seeking permission to admit at trial and Petitioner was seeking to exclude.  The prosecutor filed a notice of intent to introduce the victim's (or perhaps the victim's sister's) out-of-court statement about sexual acts under Michigan Rule of Evidence 803A, a notice of intent to offer evidence pursuant to Michigan Rules of Evidence 902(11) and 803(6), and a notice of intent to offer evidence of Petitioner's past criminal sexual conduct under Mich. Comp. Laws § 768.27.  (Cass Cnty. Cir. Ct. Register of Actions, ECF No. 14-1, PageID.311–312.)  Petitioner objected to the 803A notice and the § 768.27 notice.  Petitioner also moved to exclude the testimony of the prosecutor's proposed expert, Gloria Gillespie, and to suppress the contents of Petitioner's cell phone.  (*Id.*)

43

The trial court considered all of the motions at a hearing on May 19, 2016, the week before trial.  It does not appear that hearing was transcribed.  It was not considered by the Michigan appellate courts.  *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default. aspx?SearchType=1&CaseNumber=334153&CourtType_CaseNumber=2 (visited Mar. 28, 2021).  No transcript of that hearing were provided to this Court.

The results of the hearings are apparent, however, based on how the evidence came in at trial.  The trial court permitted the prosecutor to present evidence regarding the existence of Petitioner's prior criminal sexual offense, the name of the offense he had committed, the state police records regarding his registration as a sex offender, and the information packet Petitioner had received from the Michigan State Police, all under Michigan Rules of Evidence 902(11) and 803(6) as certified records of regularly conducted activity.  Although the prosecutor referenced the title of the offense Petitioner had committed, she did not solicit evidence regarding the facts that gave rise to the offense.  Thus, it is apparent that Petitioner prevailed on his objection to the admission of evidence under Mich. Comp. Laws § 768.27.

Moreover, neither Ms. Johns, the victim's mother, nor the forensic interviewer testified regarding the victim's (or her sister's) out-of-court statements regarding sexual acts.[7] Thus, it is also apparent that Petitioner prevailed on his objection to the admission of evidence under Michigan Rule of Evidence 803A.  Evidence regarding the victim's out-of-court statements was admitted through the testimony of the SANE witness, but it appears to have been admitted under Michigan Rule of Evidence 803(4), the exception to the hearsay rule for statements made for purposes of medical treatment.

---

[7] It does not appear that the victim made such statements to her mother or Ms. Johns; but there were apparently questions regarding potential sexual abuse posed to the victim by both women.  It appears the victim only provided statements to the forensic interviewer and the SANE.  The questioning of the forensic interviewer was obviously limited at trial, indicating that she was not authorized to repeat the victim's statements.

It is likewise apparent that Petitioner's counsel prevailed on his objection to admission of the cell phone records because, based on statements regarding the content of those records in the appeal pleadings, there were significant inculpatory statements that were not introduced.  Certainly the prosecutor would not have voluntarily decided to exclude those records absent an order from the trial court.

Finally, it is apparent that Petitioner prevailed on the issue of excluding the testimony of the prosecutor's expert, Gillespie.  The record suggests that Petitioner's counsel had consulted Gillespie on behalf of Petitioner.  That is the reason the prosecutor was scrambling to identify a new expert—and even sought an adjournment for that purpose—immediately before trial.

Although Petitioner claims that the trial court completely foreclosed references to Petitioner's prior sexual misconduct during the Cass County trial, Petitioner's counsel was not that successful in his pretrial motions *in limine*.  There is a good reason counsel's success could not have been as complete as Petitioner suggests.  Petitioner was charged with failing to register as a sex offender.  The fact that Petitioner had committed a sex offense and was, therefore, required to register, were elements the prosecutor had to prove.  (Trial Tr. II, ECF No. 14-4, PageID.666–667); *see also* Michigan Model Criminal Jury Instructions 20.39.  In Petitioner's case, the prior sex offense he committed was "sexual misconduct with a child under the age of twelve."  (Trial Tr. II, ECF No. 13-4, PageID.615.)

The trial court permitted the jury to hear only the bare minimum information regarding Petitioner's prior sex offense.  Petitioner's claim that counsel was ineffective because he failed to object when the jury heard that bare minimum is absurd.  Counsel was very effective in keeping out everything but that.  It was not professionally unreasonable for counsel to not object

to the prosecutor's elicitation of evidence regarding the minimum information necessary to establish the offense with which Petitioner was charged.  Certainly no prejudice accrued because of counsel's failure to object because, as noted above, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752.  Petitioner is not entitled to habeas relief on this claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:    May 5, 2021                              /s/ Ray Kent
                                                                       Ray Kent
                                                                       United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).